UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARCEL LAMONT PRIDGEN,

                Plaintiff,

– against –

ILAND JAIL, RIKERS ILAND JAIL, *and* MS. HAYES, OFFICER IN NICC, 1ST SHIFT INTAKE,[1]

                Defendants.

**OPINION & ORDER**

22-cv-2294 (ER)

RAMOS, D.J.:

    Marcel Lamont Pridgen, acting *pro se* and *in forma pauperis*, brings this action against the City of New York ("City") and "Ms. Hayes" pursuant to 42 U.S.C. § 1983. Pridgen alleges ongoing medical problems following an incident in which he was sprayed with mace at Rikers Island jail. Read liberally, his allegations suggest that he was subject to inadequate medical care and excessive force. The City brings the instant motion to dismiss Pridgen's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, the City's motion is GRANTED.

**I.    BACKGROUND**

    When he filed his complaint, Pridgen was a pretrial detainee at Rikers Island jail. Doc. 2 at 2, 7. He was 52 years old with a history of achalasia, asthma, herniated discs, and brain surgery. *Id.* at 4.

    Pridgen alleges that, on December 31, 2021 at some time between 5:30 and 7:00 pm at Rikers Island, he was sprayed with mace in his eyes and mouth. *Id.* at 4, 7. As a result, he experienced wheezing and chest discomfort followed by a slow pulse and

---

[1] Although Pridgen initially brought his claims against Ms. Hayes, "Iland Jail," and "Rikers Iland Jail," the claims against "Iland Jail" and "Rikers Iland Jail" were dismissed by this Court on April 6, 2022 because they are not "persons" within the meaning of § 1983. Doc. 6 at 3. The Court construed the complaint as making claims against the City of New York ("City"), adding the City as a defendant. *Id.* Additionally, the City has been unable to identify Ms. Hayes, although she remains a defendant. Doc. 17 at 5.

brief unconsciousness. *Id.* at 4. Pridgen claims that he was suspected to be in cardiac arrest, although he does not mention who made that determination. *Id.* He also asserts that he had a "heart attack cause[d] by the mace," again without specifying who made such a finding. *Id.* at 7. According to Pridgen, he did not have a pulse for an unknown period of time. *Id.* at 4.

An unspecified individual administered CPR to Pridgen until he was resuscitated. *Id.* After being resuscitated, he was taken to "Rikers Intake Medical" for forty minutes until an escort became available to take him to the hospital. *Id.* However, it is unclear whether Pridgen was ever actually taken to the hospital.

As a result of this incident, he claims to have had a sore throat and lungs, problems swallowing, and sporadic shortness of breath. *Id.* at 5. Additionally, he asserts that, since the incident, his lungs are "always on fire," his breathing is "very different," and his spit contains blood "all the time." *Id.* Pridgen claims to "have not had any follow up visits to [the] hospital." *Id.*

On March 21, 2022, Pridgen brought this action *pro se* against the City and Ms. Hayes, requesting relief in the amount of $150,000 and medical care. Doc. 2 at 1, 3, 5; Doc. 6 at 3. Hayes is described by Pridgen as an "Officer in NICC, 1st Shift Intake" at the Rikers Island jail. Doc. 2 at 3. Pridgen provides no further information about Hayes. Since filing his complaint on March 21, 2022, Pridgen has not communicated with the Court in any manner.

In his complaint, Pridgen selected "Other" as the legal basis for his claim without providing any further information, thereby not explicitly asserting a violation of his federal constitutional rights. *Id.* at 2. However, per its obligation to read a *pro se* plaintiff's complaint liberally, the Court construes Pridgen's complaint as suggesting federal claims under 42 U.S.C. § 1983 for excessive force and inadequate medical care. This reading of the complaint is consistent with the City's, as discussed in its Memorandum in Support of the motion to dismiss. Doc. 17 at 9, 13.

2

The City moved to dismiss Pridgen's complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted on July 12, 2022. *Id.* at 6. Alternatively, the City asks that the Court to direct Pridgen to provide a more definite statement pursuant to Rule 12(e). *Id.*

Pridgen has not responded to the City's motion or communicated with the Court or the City by any means. Doc. 20 at 1. Accordingly, the Court has deemed the motion fully submitted without opposition. *Id.*

## II. LEGAL STANDARD

When the issue before the Court involves a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), the Court must consider the Rule 12(b)(1) motion first because "disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." *Chambers v. Wright*, No. 5 Civ. 9915 (WHP), 2007 WL 4462181, at *2 (S.D.N.Y. Dec. 19, 2007) (internal quotation marks and citation omitted); *see also Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d 490, 499 (S.D.N.Y. 2011), *aff'd*, 496 F. App'x 131 (2d Cir. 2012).

### A. 12(b)(1) Motion to Dismiss Standard

Pursuant to Rule 12(b)(1), the Court must dismiss a case for lack of subject matter jurisdiction if the Court "lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). The party asserting subject matter jurisdiction bears the burden of establishing that jurisdiction exists by a preponderance of the evidence. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova*, 201 F.3d at 113). The Court accepts all material factual allegations in the complaint as true, *id.* (quoting *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006)), but it does not presume the truthfulness of the complaint's jurisdictional allegations, *Frisone v. Pepsico, Inc.*, 369 F. Supp. 2d 464, 469–70 (S.D.N.Y. 2005) (quoting *Augienello v. Fed. Deposit Ins. Corp.*,

3

310 F. Supp. 2d 582, 588 (S.D.N.Y. 2004)).  When evaluating a Rule 12(b)(1) motion, the Court may consider evidence outside of the pleadings to resolve the disputed jurisdictional fact issues.  *Zappia Middle E. Constr. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *see also Morrison*, 547 F.3d at 170 (citing *Makarova*, 201 F.3d at 113).  However, the Court should refrain from drawing inferences in favor of the party asserting subject matter jurisdiction on a Rule 12(b)(1) motion.  *People United for Child., Inc. v. City of New York*, 108 F. Supp. 2d 275, 283 (citing *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir.1992)).

### B.  12(b)(6) Motion to Dismiss Standard

On a motion to dismiss pursuant to Rule 12(b)(6), the Court is required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  However, the Court is not required to credit legal conclusions, bare assertions, or conclusory allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain enough factual matter to state a claim to relief that is plausible on its face.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  Accordingly, a plaintiff is required to support its claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  If the plaintiff has not "nudged [his] claims . . . across the line from conceivable to plausible," the complaint must be dismissed.  *Id.* at 680 (quoting *Twombly*, 550 U.S. at 570).

### C.  Pro Se Plaintiff

When "the complaint [is] filed *pro se*, it must be construed liberally to raise the strongest arguments [it] suggest[s]." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)

4

(internal quotation marks and citation omitted).  The obligation to read a *pro se* litigant's pleadings leniently "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)).  "However, even *pro se* plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III. ANALYSIS

Pridgen's failure to respond to the motion to dismiss does not on its own warrant dismissal.  *See McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000).  "If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *Id.* at 323; *see also Goldberg v. Danaher*, 599 F.3d 181, 183 (2d Cir. 2010) (suggesting that a plaintiff's failure to respond to any motion under Rule 12 does not on its own warrant dismissal).  "[T]he sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law."  *McCall,* 232 F.3d at 322–23.

#### A.  Pridgen Sufficiently Establishes Standing

The City asks the Court to dismiss this action pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.  To the extent that the City's motion to dismiss for lack of subject matter jurisdiction is based upon the deficiency in Pridgen's § 1983 allegations, Rule 12(b)(1) is the improper vehicle for such an argument.  *See Sisak v. Nat'l R.R. Passenger Corp. (Amtrak),* No. 91 Civ. 1030 (JFK), 1992 WL 42245, at *2 (S.D.N.Y. Feb. 24, 1992) (quoting *AVC Nederland B.V. v. Atrium Inv. Partnership,* 740 F.2d 148, 152–53 (2d Cir.1984)) ("[A] section 1983 claim should not be dismissed for want of jurisdiction except when 'it appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'").  Even where the Court anticipates that dismissal under Rule 12(b)(6) would

be proper, it should not dismiss an action for lack of jurisdiction. *See Spencer v. Casavilla,* 903 F.2d 171, 173 (2d Cir. 1990).

In checking the "Other" box in his complaint, without providing any further federal legal basis for his claim, Pridgen did not explicitly assert that any of his federal or constitutional rights were violated. Doc. 2 at 2. However, because Pridgen filed his complaint *pro se*, the Court must read his allegations liberally. *See Walker*, 717 F.3d at 124. At a minimum, his allegations suggest violations of § 1983 for excessive force and inadequate medical care. Accordingly, the complaint arguably raises a federal question, and subject matter jurisdiction is established.

### B. Pridgen Fails to State a Claim Under § 1983

To state a claim under § 1983, Pridgen must allege that: (1) defendants were state actors or were acting under color of state law at the time of the alleged wrongful action; and (2) the action deprived Pridgen of a right secured by the Constitution or federal law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). Section 1983 does not create any rights, but merely provides "a procedure for redress for the deprivation of rights [already] established." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). Accordingly, this action brought under § 1983 will stand only insofar as Pridgen can prove an actual violation of his rights under the Constitution or federal law. *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)).

Both of Pridgen's § 1983 claims would require establishing that (1) Hayes was personally involved in the alleged violations, *see Kravitz v. Leis*, 803 F. App'x 547, 548 (2d Cir. 2020), (2) the City could be held municipally liable, *see Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690–92 (1978), and (3) his constitutional rights were actually violated as a result of excessive force and inadequate medical care, *see Singer*, 63 F.3d at 119 (citing *Adickes*, 398 U.S. at 150). Failure to establish even one of the

6

aforementioned requirements would result in the dismissal of Pridgen's claims against the City. Pridgen fails to establish all three; therefore, his claims must be dismissed.

### 1. *There was no alleged personal involvement by Hayes in either alleged deprivation.*

In the Second Circuit, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Kravitz*, 803 F. App'x at 548 (internal quotation marks and citation omitted). Consequently, Pridgen must allege specific facts to show that Hayes was personally aware of the alleged illegal conduct. *See Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001). Pridgen may satisfy the personal involvement requirement by demonstrating that Hayes "(i) personally participated in the violation, (ii) was grossly negligent in supervising subordinates who committed the wrongful acts, or (iii) exhibited deliberate indifference by failing to act on information indicating the unconstitutional acts were occurring." *McCoy v. Goord*, 255 F. Supp. 2d 233, 245 (S.D.N.Y. 2003) (citation omitted).

Pridgen's complaint offers no insight into how the individual defendant, Hayes, personally participated in depriving Pridgen of his constitutional rights. In fact, Hayes is only referred to once in the entire complaint—in the "Defendant Information" section. Doc. 2 at 3. "It is well-settled that where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." *Magnotta v. Putnam Cnty. Sheriff*, No. 13 Civ. 2752 (GBD) (GWG), 2014 WL 705281, at *8 (S.D.N.Y. Feb. 24, 2014) (internal quotation marks and citation omitted). In the absence of any facts suggesting that Hayes was personally aware of either alleged constitutional violations, Hayes cannot be held individually liable.

7

### 2. *Even if Hayes was personally involved, the City cannot be held liable under § 1983.*

It follows that because there is no individual liability, there can also be no municipal liability. *See Escalera v. Lunn*, 361 F.3d 737, 749 (2d Cir. 2004); *Santana v. City of New York*, No. 15 Civ. 6715 (ER), 2018 WL 1633563, at *5 (S.D.N.Y. March 29, 2018). Accordingly, the complaint must be dismissed in its entirety as against the City.

While a municipality cannot be held liable under § 1983 solely on a theory of *respondeat superior*, a § 1983 claim may be brought against a municipality if the alleged unconstitutional action was the result of an official policy, practice, or custom. *Monell*, 436 U.S. at 690–92. "[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983).

Pridgen could satisfy the official policy or custom requirement by alleging the existence of:

> (1) a formal policy officially endorsed by the [City]; (2) actions taken by [City] officials responsible for establishing the [City] policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the [City] employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. Mar. 30, 2010) (internal citations omitted). Here, Pridgen fails to plead an official policy or custom of the City; therefore, he cannot establish municipal liability. Pridgen mentions no official policy or custom of the City that caused the alleged constitutional violations against him. He only alleges a single incident in which he was sprayed with mace and suffered injuries

8

that, in his view, were not adequately treated. However, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (internal quotation marks and citation omitted). There is no alleged evidence that would suggest that excessively spraying mace or providing inadequate medical treatment is widespread or permitted by the City's policies. Additionally, Pridgen does not claim that Hayes was a policymaker nor aware of any City policy or custom endorsing the actions. Accordingly, Pridgen has failed to establish municipal liability of the City. His complaint must be dismissed against the City on that basis alone.

> 3. *Alternatively, Pridgen's claims must be dismissed because he does not sufficiently allege a deprivation of his federal constitutional rights.*

In addition to establishing individual and municipal liability, Pridgen must plausibly assert that Hayes and the City actually deprived him of his constitutional rights to be free from excessive force and receive adequate medical care. *Singer*, 63 F.3d at 119 (citing *Adickes*, 398 U.S. at 150). Pridgen does not allege sufficient facts in his complaint to establish either deprivation; therefore, both claims must be dismissed.

   a. **Excessive Force**

The right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment. *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999). Pre-trial detainees bringing excessive force claims need only show that "the force purposely or knowingly used against him was objectively unreasonable."[2] *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). The Court must consider what a "reasonable officer on the scene" would have done, not what an officer would have done with the benefit of hindsight. *Id.* at 397

---

[2] By contrast, convicted prisoners who make an excessive force claim do so under the Eight Amendment. Under that Amendment, the deliberate indifference element is defined *subjectively*, meaning the "prison official [against whom the claim is made] must appreciate the risk to which a prisoner was subjected." *Darnell*, 849 F.3d at 34–35.

9

(citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  Some of the relevant factors in assessing the reasonableness of force are:

> . . . the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* at 397.  The official must have acted "intentionally or recklessly, and not merely negligently."  *Darnell v. Pineiro*, 849 F.3d 17, 36 (2d Cir. 2017).  Additionally, the Court must take notice of the government's "legitimate interests" in "preserv[ing] internal order and discipline and [] maintain[ing] institutional security."  *Kingsley*, 576 U.S. at 397 (quoting *Bell v. Wolfish,* 441 U.S. 520, 540 (1979)).

      Pridgen fails to allege sufficient facts to establish that he was unreasonably and recklessly sprayed with mace.  While he does allege facts explaining the extent of his injuries, Doc. 2 at 4–5, he does not provide any context as to why or how he was sprayed with mace.  Nor does he identify who sprayed the mace.  In fact, Pridgen asserts that he was given CPR and taken to the hospital, both of which would suggest that prison officials took actions to temper the impact of their use of mace.  *Id.* at 4.  "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case,'" yet Pridgen provides hardly any context about the alleged use of force.  *Kingsley*, 576 U.S. at 397 (quoting *Graham,* 490 U.S. at 396).  The Court cannot determine how a "reasonable officer on the scene" would have acted without being provided sufficient facts in the complaint.  *Id.*  Absent more evidence of unreasonable conduct by any prison officer, Pridgen's claim of excessive force cannot proceed and must be dismissed.

b. **Inadequate Medical Care**[3]

The right of pretrial detainees to receive adequate medical care is protected by the Due Process Clause of the Fourteenth Amendment. *Horace v. Gibbs*, 802 Fed. Appx. 11, 13–14 (2d Cir. 2020) (unpublished). To state a claim for inadequate medical care, Pridgen must make two showings. First, "the alleged deprivation of adequate medical care must be sufficiently serious." *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (internal quotation marks and citation omitted). "Second, the defendant must [have] act[ed] with a 'sufficiently culpable state of mind.'" *Davis v. McCready*, 283 F. Supp. 3d 108, 116 (S.D.N.Y. 2017) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). This second prong is assessed objectively in a claim brought by a pretrial detainee. *Darnell*, 849 F.3d at 35.

Pridgen has not alleged sufficient facts to satisfy the first prong—a deprivation of adequate medical care that is sufficiently serious. When the alleged inadequacy is failure to provide medical care, as it is here, the Court considers whether a reasonable doctor or patient would find the medical conditions important and worthy of comment, whether the conditions significantly affect an individual's daily activities, and whether the conditions cause chronic and substantial pain. *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). Importantly, Pridgen does not assert that he was entirely deprived of medical care. He explains that someone successfully administered CPR until he was resuscitated. Doc. 2 at 4. Pridgen was then taken to Rikers Island's medical clinic, where he waited for forty minutes to obtain an escort to the hospital. *Id.* However, it is unclear whether Pridgen was ever actually taken to the hospital.[4] Regardless, the initial medical care provided to Pridgen weighs against his § 1983 claim.

---

[3] This claim is sometimes referred to as deliberate indifference to serious medical needs, as it is in the City's Memorandum in Support of the Defendant's Motion to Dismiss. Doc. 17 at 9.

[4] Pridgen does mention, though, that he has not had any "follow up visits to [the] hospital." *Id.* at 5.

Weighing in favor of this claim, though, is Pridgen's suggestion that he is experiencing chronic and substantial pain. He claims that his "lungs are always on fire" and his "breathing [is] very different." *Id.* at 5. He additionally asserts that he is "[spitting] blood all the time" and experiencing "shortness of breath, [sporadically] out of nowhere all the time." *Id.* However, it is unclear whether these conditions "significantly affect[]" his daily activities. *Salahuddin*, 467 F.3d at 280. It is also unclear what, if any, guidance he received from medical professionals regarding the severity of his medical issues. Without these facts in the complaint, Pridgen cannot establish a sufficiently serious deprivation of medical care.

Even if the deprivation can be fairly classified as sufficiently serious, Pridgen does not suggest that Hayes—or any prison official for that matter—had a "sufficiently culpable state of mind," as required by the second prong of an inadequate medical care claim. *Davis*, 283 F. Supp. 3d at 116. To satisfy this second prong, Pridgen must demonstrate that Hayes knew, or should have known, that her actions posed an excessive risk to Pridgen's health or safety but nevertheless proceeded with such actions. *Roice v. County of Fulton*, 803 F. App'x 429, 432 (2d Cir. 2020) (unpublished) (quoting *Darnell*, 849 F.3d at 35). "[N]egligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (citation omitted). Pridgen does not assert that any prison officer or medical professional knew of his ongoing medical issues, nor that anyone was aware of his pre-existing medical conditions. In fact, Pridgen does not detail any interactions between himself and prison officials beyond those that occurred on December 31, 2021— the day he was sprayed with mace and taken to the hospital. Doc. 2 at 4. Without any facts suggesting that prison officials knew or should have known about his pre-existing and ongoing medical problems, Pridgen cannot establish that such officials acted with deliberate indifference. Accordingly, Pridgen has failed to state a claim for inadequate medical treatment.

### C. Leave to Amend

The Court will, however, grant Pridgen leave to amend his complaint. Courts are instructed to "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has instructed courts not to dismiss a complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)) (internal quotation marks omitted). In *Lorely Financing*, the Second Circuit reaffirmed the "liberal spirit" of Rule 15 and counseled strongly against the dismissal of claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims. *Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190–91 (2d Cir. 2015) (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) (per curium)).

Here, because this is the Court's first opportunity to highlight the precise defects of Pridgen's pleading and it is not yet apparent that another opportunity to amend would be futile, the Court will permit him to replead the dismissed claims.

### IV. CONCLUSION

For the foregoing reasons, the City's motion is GRANTED. Pridgen is granted leave to file an amended complaint. If Pridgen chooses to file an amended complaint, he must do so by March 3, 2023. If he fails to file an amended complaint by that date, the case will be closed. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 15.

It is SO ORDERED.

Dated: February 1, 2023
        New York, New York

                                          EDGARDO RAMOS, U.S.D.J.